**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NANCY MESSIMER, | : | Case No. 4:12-CV-02143 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | (Magistrate Judge Arbuckle) |
| | : | |
| ALBRIGHT CARE SERVICES, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**February 10, 2017**

Before the Court for disposition are Defendant Albright Care Services'
(hereinafter "Defendant") Motion for Summary Judgment and its Motion to Strike.
Magistrate Judge William I. Arbuckle III has prepared a Report and
Recommendation concerning these matters.  For the following reasons, this Report
and Recommendation will be adopted in its entirety.  Defendant's Motion for
Summary Judgment will therefore be completely granted and its Motion to Strike
denied as moot.

## I.   BACKGROUND[1]

On October 26, 2012, Plaintiff Nancy Messimer ("Plaintiff") filed a Complaint[2] with this Court alleging (1) one count of age discrimination in violation of the Age Discrimination in Employment Act of 1976,[3] and (2) one count of age discrimination in violation of the Pennsylvania Human Relations Act.[4] The circumstances underlying this Complaint have since been fully developed through the discovery process.  These circumstances follow.

In October 1993, Plaintiff began her employment with Defendant as a part-time registered nurse (RN).  She was subsequently made full-time on October 3, 1994,[5] and was promoted six years later to the position RN Shift Nursing Supervisor.[6]  Plaintiff held this position at the time of her termination.  Between 1994 and 2009, Plaintiff was never disciplined for her job performance and was awarded a pay raise each year based on her consistently positive annual performance evaluations.[7]  As a result, Plaintiff had become, by June 2010, one of

---

[1]   The following abbreviated background serves to orient the reader and provide background information relevant to the Court's analysis of Plaintiff's objections.  An extensive factual background and procedural history of this case is set forth in Magistrate Judge Arbuckle's Report and Recommendation, and is fully adopted by this Court.

[2]   Compl. (ECF No. 1).

[3]   29 U.S.C. § 621 *et seq*.

[4]   43 P.S. § 951 *et seq*.

[5]   Compl. ¶ 10, at 3.

[6]   Id. ¶ 11, at 4; Answer (ECF No. 2) ¶ 11, at 2.

[7]   Compl. ¶ 12, at 4; Answer ¶ 12, at 2.

the most senior and higher paid members of Defendant's nursing staff.[8]  Plaintiff was terminated that same month.  The reason for that termination is the central issue of this action.

Plaintiff's duties as RN Shift Nursing Supervisor required her to provide overall supervision of the other employees at the facility.[9]  On June 14, 2010 at 4:00 a.m., a situation arose in which a resident ("Resident C") in Defendant's Riverwoods facility required stabilization.[10]  Plaintiff and other staff stabilized Defendant.  After completing this action, a certified nursing assistant (CNA) as well as a licensed practical nurse (LPN) remained in the room with Resident C's spouse while Plaintiff left to attend to other workplace obligations.[11]  Plaintiff was subsequently called back to the room at approximately 5:50 a.m. to reexamine Resident C.[12]  Upon determining that Resident C had passed away, Plaintiff did not administer CPR to Resident C, and instead reported his death to both the Assistant Director of Nursing and the Director of Nursing of the Riverwoods facility.[13]  On

---

[8]  Compl. ¶ 14, at 4, Answer ¶ 14, at 2.

[9]  Compl. ¶ 17, at 4; Answer ¶ 17, at 2.

[10]  Compl. ¶ 16, at 4; Answer ¶ 16, at 2.

[11]  Compl. ¶ 17, at 4; Answer ¶ 17, at 2.

[12]  Compl. ¶ 18, at 4; Answer ¶ 18, at 2.

[13]  Compl.¶¶ 20, 23, at 5; Answer ¶¶ 20, 23, at 2–3.

June 18, 2010, Defendant subsequently terminated Plaintiff for failure to perform CPR in conformance with the employee code of conduct.[14]

Since its inception, this case has been jointly assigned to Magistrate Judge Arbuckle.  On April 23, 2015, Defendant filed a Motion for Summary Judgement.[15]  This Motion was followed by a Motion to Strike on July 23, 2015.[16] These Motions were briefed, and Magistrate Judge Arbuckle held oral argument on June 14, 2016.[17]  His Report and Recommendation was subsequently issued on October 4, 2016.[18]  Plaintiff timely objected to this Report on October 18, 2016,[19] and the parties have since fully briefed the matter.[20]

## II.    LAW
### A. REPORT AND RECOMMENDATION

Upon designation, a magistrate judge may "conduct hearings, including evidentiary hearings, and ... submit to a judge of the court proposed findings of fact and recommendations."[21]  Once filed, this Report and Recommendation is disseminated to the parties in the case who then have the opportunity to file written

---

[14] Compl. ¶ 21, at 5; Answer ¶ 21, at 2.

[15] ECF No. 33.

[16] ECF No.44.

[17] ECF No. 51.

[18] ECF No. 57.

[19] ECF No. 60.

[20] ECF Nos. 61 & 64.

[21] 28 U.S.C. § 636(b)(1)(B).

objections.[22]  When objections are timely filed, the District Court must conduct a

*de novo* review of those portions of the report to which objections are made.[23]

Although the standard of review for objections is *de novo*, the extent of review lies

within the discretion of the District Court, and the court may otherwise rely on the

recommendations of the magistrate judge to the extent it deems proper.[24]

For portions of the Report and Recommendation to which no objection is

made, the court should, as a matter of good practice, "satisfy itself that there is no

clear error on the face of the record in order to accept the recommendation."[25]

Regardless of whether timely objections are made by a party, the District Court

may accept, not accept, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge.[26]

## B. SUMMARY JUDGMENT

Summary judgment is appropriate where "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[22]  28 U.S.C. § 636(b)(1).

[23]  28 U.S.C. § 636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011).

[24]  Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

[25]  Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987)) (explaining that judges should give some review to every report and recommendation).

[26]  28 U.S.C. § 636(b)(1); Local Rule 72.31.

matter of law."[27]   A fact is "material" where it "might affect the outcome of the suit under the governing law."[28]   A dispute is "genuine" where "the evidence is such that a reasonable jury," giving credence to the evidence favoring the nonmovant and making all inferences in the nonmovant's favor, "could return a verdict for the nonmoving party."[29]

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.[30]   The moving party may satisfy this burden by either (i) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (ii) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.[31]

Where the moving party's motion is properly supported, the nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[32]   For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed

---

[27]  Fed. R. Civ. P. 56(a).

[28]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[29]  Id.

[30]  In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).

[31]  Id. at 331.

[32]  Anderson, 477 U.S. at 250.

must" be supported by "materials in the record" that go beyond mere allegations, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[33]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[34]  Furthermore, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[35]

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but instead to determine whether there is a genuine issue for trial.[36]  Credibility determinations are the province of the factfinder, not the District Court.[37]  Although the court may consider any materials in the record, it need only consider those materials cited.[38]

---

[33] Fed. R. Civ. P. 56(c)(1); see also Anderson, 477 U.S. at 248–50.

[34] Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2003).

[35] Fed. R. Civ. P. 56(e)(2).

[36] Anderson, 477 U.S. at 249.

[37] BWM, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

[38] Fed. R. Civ. P. 56(c)(3).

## III.   ANALYSIS

As noted above, Plaintiff Nancy Messimer brings this action pursuant to Age Discrimination in Employment Act and the Pennsylvania Human Relations Act.[39] The Age Discrimination in Employment Act ("ADEA"), codified at 29 U.S.C. § 621 *et seq.*, makes it unlawful "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[40]  To succeed on a claim of age discrimination brought under this statute, a plaintiff "may meet his or her burden by (1) presenting direct evidence of discrimination that meets the requirements of Justice [Sandra Day] O'Connor's concurring opinion in Price Waterhouse v. Hopkins, 490 U.S. 228, 261 (1989), or (2) presenting indirect evidence of discrimination that satisfies the familiar three-step burden shifting framework identified in *McDonnell Douglas*."[41]

Because Plaintiff has adduced only circumstantial evidence, analysis of her claim proceeds under the *McDonnell-Douglas* framework.  That analysis proceeds as follows:

---

[39]   Because analysis of this statute is analogous with that of the ADEA, my discussion, while limited in reference to the ADEA, applies equally to the disposition of this claim.  See Fasold v. Justice, 409 F.3d 178, 184 n.8 (3d Cir. 2005).

[40]   29 U.S.C. § 623(a)(1).

[41]   Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 300 (3d Cir.2004) (footnote omitted) (referring to McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

First, the plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.[42]

In his well-reasoned Report and Recommendation, Magistrate Judge Arbuckle found that Plaintiff has first, failed to assert a prima facie case of age discrimination,[43] and second, failed to present evidence sufficient to show that Defendant's legitimate, non-discriminatory reason was pretextual.[44]  Plaintiff, in turn, disputes both of these findings, and ultimately argues that summary judgment in favor of Defendants is inappropriate.  I disagree.  My analysis in support of this conclusion follows below.

## A. Plaintiff Has Failed To Adduce Evidence From Which A Reasonable Jury Could Find A Prima Facie Case of Age Discrimination In Violation of the ADEA.

To satisfy the first stage of the *McDonnell-Douglas* burden shifting framework, the plaintiff must establish a *prima facie* case of discrimination.[45] Applied to the context of age discrimination, this prima facie case requires that "(1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse

---

[42] <u>Jones v. Sch. Dist. of Philadelphia</u>, 198 F.3d 403, 410 (3d Cir. 1999) (quoting <u>McDonnell Douglas</u>, 411 U.S. at 802).

[43] Report and Recommendation (ECF No. 57) at 17.

[44] <u>Id.</u> at 23.

[45] <u>Willis v. UPMC Children's Hosp. of Pittsburgh</u>, 808 F.3d 638, 644 (3d Cir. 2015).

employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive."[46] However, if plaintiff is not replaced by a sufficiently younger worker, the fourth element can also be satisfied through "facts which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.' "[47]

Because satisfaction of the first three elements of Plaintiff's prima facie case was undisputed by the parties,[48] Magistrate Judge Arbuckle limited his analysis to the fourth prong as delineated above.  In so doing, he found that (1) Plaintiff has adduced no admissible evidence from which a reasonable jury could find that Defendant replaced her with someone younger, and (2) the CNAs who were treated more favorably were not similarly situated with Plaintiff.  Plaintiff objects to these findings.  She argues instead that a genuine dispute as to material fact precludes summary judgment because evidence exists that (1) Plaintiff was replaced by a sufficiently younger individual, and (2) the CNAs relevant to the instant dispute were in fact "similarly situated."[49]  Having reviewed *de novo* Magistrate Judge Arbuckle's conclusions on this issue, I am satisfied that the Report and

---

[46] Id.

[47] Id. (citing Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 357 (3d Cir. 1999)).

[48] Report and Recommendation (ECF No. 57), at 13.

[49] See generally Pl.'s Br. in Supp. of her Objections to the Report and Recommendation (Pl.'s Br.) (ECF No. 61).

Recommendation contained no error sufficient to alter its ultimate recommendation on this issue.

First, although the Report and Recommendation improperly intimated that a replacement individual within the protected class cannot satisfy the fourth prong of the prima facie case as last enunciated by our Court of Appeals in Willis,[50] this error is irrelevant as there is a complete paucity of admissible evidence otherwise indicating the existence or identity of a replacement.  Federal Rule of Civil Procedure 56(c)(2) requires that, to be included within the factual record and thus considered at the summary judgment stage, evidence must be capable of being admissible at trial.[51]  This general rule necessarily implicates Federal Rule of Evidence 602, which states

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.[52]

---

[50]  See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996)(holding that a prima facie case under the ADEA requires only that the replacement was substantially younger than plaintiff and not that the replacement was outside the protected class).

[51]  See York Intern. Corp. v. Liberty Mut. Ins. Co., Civil Action No. 1:10-CV-0692, 2015 WL 4162981, at *3 (M.D.Pa. July 9, 2015).

[52]  Fed. R. Evid. 602.

Although the United States Court of Appeals for the Third Circuit has stated that

Rule 602 creates a low threshold of admissibility,[53] this low bar does not allow

"witness testimony that is merely based on speculation."[54]

Having examined the record, I find no admissible evidence indicating who,

if anyone, replaced Plaintiff in her position as RN Shift Nursing Supervisor.  The

only evidence which intimates at a replacement was the deposition of the Assistant

Director of Nursing, Marycellis Garcia, during which Ms. Garcia stated that

Plaintiff was replaced by an individual fifteen years younger.[55]  However, as noted

in the Report and Recommendation, Ms. Garcia admitted during direct questioning

that she was not completely sure of the accuracy of this comment.[56]  During cross

examination by defense counsel, Ms. Garcia twice more admitted that she is not

completely sure who replaced Plaintiff,[57] and that she was unfamiliar with the

overall job search as she neither saw the career posting nor was a member of the

Human Resources team.[58]

---

[53] York Intern. Corp., 2015 WL 4162981, at *3 (citing Sullivan v. Warminster Twp., 461 F. App'x 157, 162 (3d Cir. 2012)).

[54] York Intern. Corp., 2015 WL 4162981, at *3.

[55] See Dep. of Marycellis Garcia (ECF No. 43-6) at 23:4-21.

[56] Id. at 23:8.

[57] Id. at 46:19-47:4.

[58] Id. at 46:11-18.

Finally, I note that the speculative nature of Ms. Garcia's "knowledge" concerning this issue was discussed at oral argument before Magistrate Judge Arbuckle and explicitly recognized by Plaintiff's counsel:

> THE COURT: Okay. I'll sort that out. I think I understand the issues. The person who replaced Ms. Messimer, it's not clear to me, and I may be the only one in the room, who replaced her?
>
> MR. O'CONNOR: There is no evidence in the record to suggest who replaced her. They didn't take that discovery. The only person who came close to speculating was Ms. Maritza Garcia, who said I think so-and-so might have replaced her but then when pressed said I can't be sure. So that's the substance of what's in the record.
>
> MR. SMITH: I concur with that, Your Honor.
>
> THE COURT: All right. If I conclude that step four requires some evidence of discrimination, which then shifts the burden and that typically is a replacement employee not in a protected class, a younger employee, **we don't have that here. But your argument is that other evidence can be circumstantially provided under step four. And you believe this record has done that. Have I got that right?**
>
> MR. SMITH: **Yes, sir**.[59]

This passage confirms the speculative and ultimately inadmissible nature of Ms. Garcia's testimony concerning this replacement issue.[60]

In his Report and Recommendation, Magistrate Judge Arbuckle also found a lack of evidence demonstrating that employees "similarly situated" to Plaintiff

---

[59] Oral Argument Transcript (ECF No. 56) at 54:22-55:15.

[60] See, e.g., Heffelfinger v. Ecopax, Inc., Civil Action No. 13-CV-2476, 2015 WL 2126993, at *4 (E.D.Pa. May 7, 2015)(granting defendant's summary judgment motion where there is a lack of admissible evidence establishing the existence of a "sufficiently younger" replacement employee).

were treated more favorably.  Plaintiff again objects to this conclusion and its supporting reasoning.  In order for employees to be similarly situated, the Third Circuit has stated that employees do not have to be identically situated, but they do need to be similar in "all relevant respects."[61]  Analyzing whether someone is "similarly situated" to the plaintiff "requires the court to undertake a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner."[62]  In this inquiry, a court should consider criteria such as job function, seniority level, disciplinary and employment history, existence of the same supervisor, and "other factors relevant to the particular workplace."[63]  A court can also look to whether employees "had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."[64]  Finally, the Third Circuit has specifically found that employees are not "similarly situated" where they are in fact subordinates of the plaintiff.[65]

---

[61] Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 223 (3d Cir. 2009) (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)).

[62] Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 305 (3d Cir.2004); see also Tice v. Centre Area Transp. Auth., 247 F.3d 506, 518 n. 10 (3d Cir.2001) ("[T]he process of determining which employees are 'similarly situated' to a plaintiff so as to allow for a meaningful comparison can be a complicated one.").

[63] Monaco, 359 F.3d at 305.

[64] Opsatnik, 335 F. App'x at 223 (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)).

[65] Norman v. Kent, 485 F.App'x. 591, 593-94 (3d Cir. 2012).

After reviewing the evidence advanced by Plaintiff concerning CNAs Helen Lowmaster and Shannon Hagenbuch, I find that Magistrate Judge Arbuckle did not err in finding that such employees were not "similarly situated" such as to create an inference of discrimination.  First, as admitted by Plaintiff herself, CNAs undergo significantly less training than their superiors—RNs or LPNs. Specifically, within Plaintiff's deposition, the following discussion occurred concerning the training and expertise held by CNAs:

> Q.    I understand that. A C.N.A., how much training do they go through?
> A.    Classroom?
> Q.    Yeah.
> A.    Probably a month.
> Q.    Okay.
> A.    I'm not sure.
> Q.    Not very much in relation to a nurse, right?
> A.    Oh, absolutely not.
> Q.    Okay, a nurse is far superior in her knowledge of the human body, right?
> A.    Correct.[66]

This substantial difference in training was further confirmed by the deposition testimony of Shannon Hagenbuch concerning the lessened training required for the CNA position.[67]

---

[66]   Dep. of Nancy Messimer (ECF No. 33-5) at 52:5-16.

[67]   Cf. Dep. of Shannon Hagenbuch (ECF No. 43-9) at 7:10-21 (explaining that CNAs only attend two weeks of training to be certified) with Dep. of Nancy Messumer (ECF No. 33-5) at 9:19-9:23 (noting the licensure requirement for RNs).

Second, even though Plaintiff is correct that both she and the relevant CNAs failed to administer CPR to the now deceased resident, the responsibilities concerning CPR differed greatly between RNs such as Plaintiff and CNAs such as Lowmaster and Hagenbuch.  Specifically, as Plaintiff herself admitted, a CNA was first required to alert an RN or LPN prior to initiating CPR "so that a professional person can come and assess and assist."[68]  This lessened responsibility concerning CPR is further established in the depositions of Shannon Hagenbuch,[69] and Helen Lowmaster[70] who both confirmed that they were not allowed to initiate CPR absent an LPN or RN's presence.

Finally, and perhaps most persuasively, the CNAs cannot be considered "similarly situated" because they were in fact subordinates to Plaintiff.  In Norman v. Kmart Corp., our Court of Appeals affirmed the grant of summary judgment in favor of defendant by finding that employees who are "subordinates or did not commit violations of the same scope and scale" are not similarly situated.[71]  In the instant matter, it is undisputed that, at the time of her termination, Plaintiff was employed as an RN Shift Nursing Supervisor charged with providing overall

---

[68]   Dep. of Nancy Messimer (ECF No. 33-5) at 51:15-21.

[69]   Dep. of Shannon Hagenbuch (ECF No. 43-9) at 31:15-32:11.

[70]   Dep. of Helen Lowmaster (ECF No. 43-8) at 58:23-59:12.

[71]   Norman, 485 F. App'x at 593.

supervision of the other employees at the facility.[72]  Within the chain of command

at Defendant's Riverwoods facility, this position therefore required supervision of

both the charge nurses, or LPNs, and the numerous CNAs during that shift.  This

hierarchy was corroborated by the deposition testimony of Executive Director

Anthony Cooper,[73] and CNA Helen Lowmaster.[74]

Plaintiff attempts to shroud the Report and Recommendation's finding that

the CNAs were not "similarly situated" by citing Anderson v. Haverford College,

which stated in pertinent part

> In order to make this showing, each Plaintiff must establish "that the other employee's acts were of 'comparable seriousness' to his own infraction." (Citation Omitted). They must show that they and Ricker "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (Citation Omitted).[75]

I am unpersuaded by this citation.  Specifically, as previously explained, Plaintiff's

act, or in this case failure to act, was not of "comparable seriousness" given

Plaintiff and the involved parties' understanding of their respective job

responsibilities.  Furthermore, even if the involved parties' failure to act was of

---

[72]   Compl. (ECF No. 1) ¶ 17, at 4; Answer (ECF No. 2) ¶ 17, at 2.

[73]   Dep. of Anthony Cooper (ECF No. 43-5) at 34:2-19.

[74]   Dep. of Helen Lowmaster (ECF No. 43-8) at 12:4-24.

[75]   868 F.Supp. 741, 745 (E.D.Pa. 1994).

"comparable seriousness," this determination is, as shown above, but one facet of a factually intensive analysis.[76]

Although I conclude that no reasonable jury could find that Plaintiff established a prima facie case of age discrimination, my analysis will also address Plaintiff's argument that the Report and Recommendation was in error by determining that the factual record lacked sufficient evidence demonstrating that the asserted legitimate, non-discriminatory reason is pretextual.

### B. Plaintiff Has Failed To Adduce Evidence From Which A Reasonable Jury Could Conclude That Defendant's Legitimate, Non-Discriminatory Reason Was Pretextual.

Once a defendant employer has alleged a legitimate, non-discriminatory reason, the burdens shifts back to the plaintiff to show, by a preponderance of the evidence, that this reason is pretextual.[77]  Our Court of Appeals has explicitly instructed district courts who are disposing of a summary judgment motion in the employment discrimination setting as follows:

> [T]o defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

---

[76]   See, e.g., Mitchell v. City of Pittsburgh, 995 F.Supp.2d 420, 431 (W.D.Pa. 2014)(including the "comparable seriousness" analysis within a multi-faceted and factually intensive "similarly situated" analysis).

[77]   Willis, 808 F.3d at 644.

In other words, . . . a plaintiff who has made out a <u>prima facie</u> case may defeat a motion for summary judgment by <u>either</u> (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that <u>each</u> of the employer's proffered non-discriminatory reasons was either a <u>post hoc</u> fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).

To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder <u>could</u> rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons. While this standard places a difficult burden on the plaintiff, it arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decision-making by the private sector in economic affairs.[78]

Based on the above direction, I find that, even assuming that Plaintiff was able to establish a prima facie case, the summary judgment record nevertheless contains no evidence from which a reasonable jury could conclude that Defendant's stated reason for her termination was simply a pretext for

---

[78] <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764–65 (3d Cir. 1994) (Becker, C.J.) (internal citations and quotations omitted) (emphasis in original).

discrimination.  In the instant matter, Defendant asserts that Plaintiff's termination was the result of "her conduct regarding Resident C's death because she acted in derogation of the resident's rights and applicable law, as found by the DOH investigation."[79]  Plaintiff, in turn, argues that this reason is pretextual by averring (1) that Defendant's reliance on company policy is nonsensical as it did not relate to CPR, and (2) that there are inconsistencies concerning who made the decision to terminate her.

Plaintiff's arguments on this point miss the mark.  First, Plaintiff's attempt at drawing into question the wisdom of terminating her based on both the emergency care policy and the DOH Report would not allow a reasonable jury to find pretext. Specifically, Plaintiff devotes much ink to the clarity of the policy, its subsequent revision, and finally the ultimate wisdom of Plaintiff's termination as based on both the policy and the derivative DOH Report.  In support of these arguments, Plaintiff adduces the testimony of CNA Lowmaster and Marycellis Garcia who both argued that the CNAs should also have been fired for their failure to perform CPR.[80]  To show a lack of policy clarity, she also cites the testimony of Cindy Wolfe, Defendant's CPR instructor, concerning the evolution of the CPR policy.[81]

---

[79]  Report and Recommendation (ECF No. 57) at 18.

[80]  Pl.'s Br. in Supp. of Objections to the Report and Recommendation (ECF No. 61), at 16–17.

[81]  Id. at 17–19.

I conclude that Magistrate Judge Arbuckle was correct in finding that this is not proper evidence of pretext from which a reasonable factfinder could rationally infer that the employer did not act for the stated reasons.  Specifically, to the extent Plaintiff argues that Defendant's reliance on the CPR policy is nonsensical, I am in agreement with Magistrate Judge Arbuckle that this argument is irrelevant to instant inquiry concerning pretext.  As noted above, Plaintiff cannot show pretext at this stage of the proceeding through evidence that Defendant's decision was "wrong or mistaken," but rather must present evidence from which a "reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons."[82]

Here, it is undisputed that the United States Department of Health and Human Services investigated and cited Plaintiff for her failure to perform CPR in accordance with the emergency care policy.  While Defendant's reliance on this report's conclusion may have been incorrect, I am in agreement with the Report and Recommendation that evidence which ultimately questions the wisdom of that decision does not constitute proper evidence.  As noted by our Court of Appeals, "'federal courts are not arbitral boards ruling on the strength of cause.'"[83] Rather, the ultimate inquiry at all times remains ' "whether the real reason is

---

[82] Fuentes, 32 F.3d at 764–65.

[83] Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997)(quoting Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir. 1996)).

[discrimination]." '[84]  Plaintiff's arguments on the wisdom of the decision therefore run afoul of this directive.

Plaintiff also devotes much discussion to suggest an inconsistency concerning the decision maker responsible for Plaintiff's termination.  Having reviewed the record in totality, I am unpersuaded by Plaintiff's argument concerning the existence and level of such an inconsistency.  However, to the extent such inconsistency is in fact present concerning the ultimate decision-maker of Plaintiff's termination, I am in agreement with Magistrate Judge Arbuckle that a rational factfinder could not find pretext to disbelieve Defendant's legitimate discriminatory reason from this minor inconsistency.

In DeCecco v. UPMC, the Honorable Joy Flowers Conti of United States District Court for the Western District of Pennsylvania was presented with a substantially similar argument that " 'an employer's effort to hide the real decisionmaker precludes summary judgment.' "[85]  Judge Conti reasoned, however, that such evidence suggesting multiple final decision makers "is not sufficient to preclude summary judgment" where the defendants did not hide "identity of the final decision maker in a way that is probative of pretext."[86]  In the instant matter, I am similarly convinced that Defendant did not hide the identity of the employees

---

[84] Id.

[85] 3 F.Supp.3d 337, 372–73 (W.D.Pa. 2014).

[86] Id.

involved in the termination decision.  Rather, like Magistrate Judge Arbuckle, I believe that the testimony of Executive Director Anthony Cooper, Human Resources Director Edith Moyer, and Director of Nursing Robin Moyer taken together more properly evidences a collaborative process between multiple managerial players.

Finally, although Plaintiff argues that there was no reputational harm to the Riverwoods facility as argued by Defendant, I find this to be a mischaracterization of both the record and a contradiction of common sense.  As noted by Magistrate Judge Arbuckle, former Executive Director of Defendant's facility Anthony Cooper stated in his deposition that the facility received a Level G citation as a result of the incident.[87]  This citation is in turn publicly available information which would unquestionably influence the decision of those choosing between skilled nursing facilities.  The citation of reputational harm is therefore not an inconsistency as alleged by Plaintiff.

As noted above, Plaintiff may also show pretext through "evidence that would allow a factfinder to believe that an invidious discriminatory reason was "more likely than not a motivating or determinative cause" of the employer's action."[88]  This showing can be satisfied through evidence that "(1) the defendant

---

[87]  Dep. of Anthony Cooper (ECF No. 43-5) at 80:17-82:18.

[88]  Willis, 808 F.3d at 645 (citing Fuentes, 32 F.3d at 764).

previously discriminated against the plaintiff; (2) the defendant discriminated against others within the plaintiff's protected class; or (3) the defendant has treated similarly situated, substantially younger individuals more favorably."[89]

Like Magistrate Judge Arbuckle, I am satisfied that the factual record as developed lacks any evidence supporting one of the above three elements.  First, Plaintiff herself admitted during her deposition that Defendant never treated her with hostility due to her age.[90]  Second, Plaintiff also failed to produce sufficient evidence that Defendant discriminated against others due to age.  Plaintiff makes much of single, unsubstantiated allegation by CNA Lowmaster that Defendant was "weeding out people."  However, a full examination of her deposition reveals that she has no evidence indicating that Plaintiff's termination was due to age,[91] and that she has no personal knowledge of anyone being fired due to age.[92]  Finally, as previously discussed at length in both this opinion and the Report and Recommendation, Plaintiff has failed to present sufficient evidence that "similarly situated" individuals were treated more favorably.  The CNAs cited by Plaintiff were dissimilar from Plaintiff in training, their pertinent supervisor, and conduct of a comparable seriousness.

---

[89] Id., 808 F.3d at 645 (citing Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cir. 1998)).

[90] Dep. of Nancy Messimer (ECF No. 33-5) at 13:18-14:12.

[91] Dep. of Helen Lowmaster (ECF No. 43-8) at 38:10-18.

[92] Id. at 44:23-46:18.

In sum, I am satisfied following *de novo* review that the Report and Recommendation contains no error preventing its adoption.  Based on my review of the arguments and record as developed by both parties, I conclude that Plaintiff has failed to present evidence demonstrating a genuine dispute such that a reasonable jury could find either the existence of a prima facie case of age discrimination, or that Defendant's legitimate, non-discriminatory reason was pretextual.[93]

## IV.   CONCLUSION

After reviewing in totality the factual record of this case, I am saddened by the story told and the many victims claimed by this single incident.  However, beyond my solicitude for the unfortunate circumstances involved, I am convinced that Magistrate Judge Arbuckle's Report and Recommendation is wholly correct in its suggested legal disposition.  Accordingly, Defendant's Motion for Summary Judgment is granted and its Motion to Strike is denied as moot.

An appropriate Order follows.

BY THE COURT:


  s/ Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[93] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–52 (1986)("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").